F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAUL KRIPP,

        Plaintiff-Appellant,

   v.

JOHN DAVID LUTON, District
Attorney, Muskogee County, in his
individual and official capacities,
GARY STURM, Chief Investigator,
Muskogee County, in his individual
and official capacities, RICHARD
HUITT, RICHARD MORRIS, SAM
TAYLOR, JASON BRADLEY,
Officers, Muskogee County District
Attorney Drug Task Force, as
individuals, RICHARD SLADER, Fort
Gibson Chief of Police, in his
individual capacity, and the TOWN
OF FORT GIBSON,

        Defendants-Appellees.

No. 05-7062

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-04-460-WH)**

---

Submitted on the briefs:[*]

Robert J. Haupt and Rachel L. Mor, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Elizabeth R. Sharrock, Assistant Attorney General, Oklahoma City, Oklahoma, and Betty Outhier Williams, Gage & Williams Law Firm, Muskogee, Oklahoma, for Defendants-Appellees.

---

Before **TACHA**, Chief Circuit Judge, **EBEL**, Circuit Judge, and **CASSELL**, District Judge.[**]

---

**CASSELL**, District Judge.

---

This case requires us to determine when the statute of limitations begins to run for federal civil rights actions challenging a law enforcement seizure and subsequent forfeiture of property. The district court below dismissed appellant Paul Kripp's complaint challenging the seizure and forfeiture of property he alleges is his. The district court found that he filed all of his causes of action outside the time prescribed by the applicable statutes of limitations because they all accrued when law enforcement seized his property, not later when the forfeiture proceedings occurred. We agree with the district court that Mr. Kripp's

---

[*]After examining the briefs and appellate record, this panel has determined to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[**] The Honorable Paul G. Cassell, District Judge of the United States District Court for the District of Utah, sitting by designation.

causes of action regarding the initial seizure of his property accrued at the time of the seizure and thus are time-barred. But we disagree that his claims challenging the forfeiture process itself accrued so early. Rather, we hold that these causes of action accrued at the time the forfeiture proceedings were held. Because Mr. Kripp timely filed these claims, we affirm in part and reverse in part.

## FACTS AND PROCEEDINGS

Because the district court dismissed Mr. Kripp's complaint as time-barred, we accept the allegations in his complaint as true.[1] Proceeding on that basis, Mr. Kripp alleges that in the late 1990s, he loaned his son-in-law, Sean Hornback, about $30,000 worth of automotive repair tools, machinery, trailers, and other auto supplies for use in Mr. Hornback's shop. On February 8, 2000, Fort Gibson police officers searched that shop, believing Mr. Hornback was running a "chop shop" to dispose of stolen auto parts. During the search, the police officers seized cars, equipment, and all of the tools located in the shop. The next day, on February 9, 2000, Mr. Kripp's wife reported to the Muskogee County District Attorney's Office that the auto repair tools and machinery seized in the raid belonged to Mr. Kripp, thereby making a claim for the return of the property.

On July 17, 2000, the Muskogee County District Attorney's Office filed a notice of forfeiture and seizure of property pursuant to certain Oklahoma "chop

---

[1] *Edwards v. Int'l Union, United Plant Guard Workers of America*, 46 F.3d 1047, 1050 (10th Cir. 1995).

shop" forfeiture statutes.[2] Although Mr. Kripp had made a claim for the return of the property (through his wife), he was never served with the notice of forfeiture. On September 8, 2000, Mr. Kripp learned of the pending forfeiture action and filed a timely claim for return of his property.

In March 2003, the Muskogee County District Attorney's Office dropped its pending criminal charges against Mr. Hornback. It did not, however, return the property it had seized. Mr. Kripp allegedly made numerous demands on the District Attorney's Office to return his property. He also allegedly never received any written notice of any forfeiture action for any of his property. During this time, Mr. Slader apparently stored the property at the request of Muskogee County.

On March 4, 2004, the Muskogee County District Court held a forfeiture hearing regarding the seized property. Although most of his property was forfeited at this hearing, Mr. Kripp never received any notice the hearing was being held. In April 2004, the District Attorney's Office verbally notified Mr. Kripp that the Muskogee County District Court would hold another forfeiture hearing. In May 2004, Mr. Kripp went to that hearing and discovered that most of his property had been previously either sold or destroyed, resulting in only a few items remaining in the District Attorney's and Mr. Slader's custody.

---

[2] Okla. Stat. tit. 47, §§ 1501-1508 (2000).

On October 12, 2004, Mr. Kripp filed a federal civil rights action against (among others) John David Luton (the Muskogee County District Attorney), certain named police officers, Richard Slader and the town of Fort Gibson. His complaint first alleged claims under 42 U.S.C. §§ 1983 and 1985[3] against the defendants for violating his Fourth and Fourteenth Amendment rights by conducting an illegal search and seizure. Second, he alleged §§ 1983 and 1985 claims against the defendants for "deprivation of property." Specifically, he complained that certain defendants had failed to establish appropriate policies, practices, and procedures regarding the forfeiture proceedings. This was essentially a Fifth Amendment due process claim, alleging procedural and substantive due process violations from the search, seizure and subsequent forfeiture proceeding. Third, Mr. Kripp alleged RICO claims under 18 U.S.C. §§ 1962(c) and 1964[4] against the defendants for both the seizure of his property and his subsequent treatment in the forfeiture process. On February 1, 2005, Mr. Kripp filed an amended complaint changing some of the defendants but otherwise not altering the substance of his complaint.

---

[3] 42 U.S.C. §§ 1983, 1985 (2003).

[4] 18 U.S.C. §§ 1962(c), 1964 (2000).

After briefing by the parties and a hearing, the district court entered two orders effectively dismissing the case.[5] The first order dismissed the claims against the Town of Fort Gibson and Mr. Slader. The second order mirrored the first order, dismissing the claims against Mr. Luton (the District Attorney) and Messrs. Sturm, Huitt, Morris, Taylor and Bradley (all investigators in the County Drug Task Force Unit). The district court found that Mr. Kripp's §§ 1983 and 1985 claims were subject to Oklahoma's two-year statute of limitations. The court also found that Mr. Kripp's cause of action accrued on either February 8, 2000 (the date of the search), or February 9, 2000 (the date on which his wife sought return of his property from the police). Because Mr. Kripp filed his suit more than two years later on October 13, 2004, the district court held that his complaint was time-barred. In these two orders, the district court also dismissed Mr. Kripp's RICO claims under 18 U.S.C. §§ 1962(c) and 1964 due to the passage of the statute of limitations. Specifically, the court found that the "4-year statute of limitations . . . [is] the most appropriate limitations period for RICO actions."[6] Because Mr. Kripp "had at least constructive knowledge of the source

_____

[5] Order Granting Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 57], Case No. CIV-04-460-WH (May 19, 2005) (dismissing Town of Fort Gibson and Richard Slader); Order Granting Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 59], Case No. CIV-04-460-WH (May 19, 2005) (dismissing John Luton, Gary Sturm, Richard Huitt, Richard Morris, Sam Taylor and Jason Bradley).

[6] *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156

(continued...)

-6-

of the injury at the very latest on February 9, 2000, and demonstrated actual knowledge on September 8, 2000,"[7] the district court found that Mr. Kripp's RICO claims contained in the October 13, 2004 complaint were also time-barred.

Mr. Kripp took a timely appeal to this court.

## DISCUSSION

To decide the statute of limitations issues presented in this case, we find it convenient to divide Mr. Kripp's complaint into three separate parts: (1) challenges to the initial seizure of his property; (2) challenges to the forfeiture process; and (3) challenges to an alleged law enforcement conspiracy under RICO. Because the district court dismissed Mr. Kripp's complaint as time-barred on its face, we review the decision below *de novo*.[8]

*A. Mr. Kripp's Search and Seizure Claims.*

Mr. Kripp's complaint alleged a § 1983 action for an illegal search and seizure of his property. For a § 1983 action, state law determines the applicable statute of limitations.[9] Oklahoma law prescribes a two-year statute of limitations

---

[6](...continued)
(1987).

[7] Order at 5, Case No. CIV-04-460-WH (May 19, 2005).

[8] *See Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004).

[9] *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).

period for "an action for injury to the rights of another."[10]  Thus, the salient issue regarding Mr. Kripp's search and seizure claims is whether he brought them within two years of when they accrued.

Mr. Kripp's search and seizure claims alleged that various named defendants illegally searched and seized his property by conducting a warrantless search.  Mr. Kripp contends that this claim accrued not at the time of the initial seizure of his property, but only later when the final forfeiture had occurred and he had been notified of that forfeiture.  Determining when his claim accrued requires "identify[ing] the constitutional violation and locat[ing] it in time."[11] Although state law determines the applicable statute of limitations period, federal law governs the particular point in time at which a claim accrues.[12]  We have previously explained that "[s]ection 1983 claims accrue, for the purposes of the statute of limitations, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"[13]

---

[10] Okla. Stat. tit. 12, § 95 (2000); *see also Owens v. Okure*, 488 U.S. 235, 242 n.5 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1523 (10th Cir. 1988).

[11] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citation omitted).

[12] *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000); *Fratus*, 49 F.3d at 675; *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987).

[13] *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

The district court found that Mr. Kripp's § 1983 claim accrued on either February 9, 2000 (the date on which Mr. Kripp had constructive notice of the search and seizure of his property), or September 9, 2000 (the date on which Mr. Kripp filed a claim for return of property and thus indisputably had actual notice of the search and seizure of his property). Mr. Kripp argues that the district court's "evaluation [of his claim] was incorrect because the true injury . . . was not the seizure[,] but the forfeiture of his property without due process."[14]

The district court properly analyzed this issue. As we have previously explained, § 1983 "claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."[15] Additionally, for *Bivens* actions (the federal analogue to § 1983 claims), we have held that a claimant's cause of action accrues when the claimant knew or had reason to know "of the existence and cause of injury which is the basis for his action."[16] Other courts have reached similar conclusions.[17]

---

[14] Appellant's Open. Br. at 8 (Aug. 11, 2005).

[15]*Johnson County Comm'n Bd.*, 925 F.2d at 1300.

[16] *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).

[17] *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996); *see also Davis v. Ross*, 995 F.2d 137, 138 (8th Cir. 1993) (per curiam); *Rose v. Bartle*, 871 F.2d 331, 350-51 (3d Cir. 1989); *McCune v. City of Grand Rapids*,

(continued...)

The gravamen of Mr. Kripp's search and seizure claim is that the state illegally seized his property, preventing him from using his tools and other property. As the district court properly explained, that claim accrued around February 8, 2000, when the police seized his tools following the search of Mr. Hornback's shop, a fact that Mr. Kripp apparently learned of quickly. At the very latest, Mr. Kripp's claim would have accrued several months later, on September 9, 2000, when he filed for return of his property. In either event, he filed his claim outside the applicable two-year statute of limitations, and the district court therefore properly dismissed it.

*B. Mr. Kripp's Claims Regarding the Forfeiture Process.*

Mr. Kripp's complaint also alleged violations of his due process rights during the forfeiture process. His second cause of action alleged that the state defendants had "failed to establish a policy, practice and procedure to ensure that the proper and legal process for the . . . legal forfeiture of property."[18] The district court found this claim was not timely filed because it accrued at the time of the original search and seizure.

---

[17](...continued)
842 F.2d 903, 906 (6th Cir. 1988); *Mack v. Varelas*, 835 F.2d 995, 999-1000 (2d Cir. 1987); *Davis v. Harvey*, 789 F.2d 1332, 1333 n.1 (9th Cir. 1986); *Rinehart v. Locke*, 454 F.2d 313, 315 (7th Cir. 1971).

[18] Compl. at 5.

We conclude that the district court took too narrow a view of Mr. Kripp's complaint. The second cause of action challenges not only the initial seizure of his property, but also its subsequent forfeiture. In particular, this cause of action contends that the forfeiture process operated in violation of Mr. Kripp's due process right, by failing to give him fair notice of the proceedings (among other things). Because this cause of action raises a challenge to this later *process* instead of the initial seizure, it was timely filed.

This court's decision in *United States v. Rodriguez-Aguirre*[19] is instructive. There, plaintiffs (convicted drug dealers) sought return of their personal property taken by the United States during a criminal investigation. The plaintiffs brought their action in 2000, almost eight years after the property at issue had been seized by federal agents pursuant to search warrants issued in 1992.[20] Much like the current case, the United States argued that the plaintiffs' cause of action accrued "at the time when the property was seized."[21] The United States argued (as do the appellees here) that "[t]he bottom line is that [the plaintiffs] knew in . . . 1992 that the property they claim, if it exists, had been seized."[22] This court rejected the position of the United States, and sided with the plaintiffs. Quoting the

---

[19] 264 F.3d 1195 (10th Cir. 2001).

[20] *Id*. at 1200.

[21] *Id*. at 1210.

[22] *Id*.

Second Circuit's decision in *Polanco v. United States Drug Enforcement Administration*,[23] we noted that "'the specific constitutional violation alleged – the permanent deprivation of [the claimant's] property without notice – did not occur until sometime later, when the property was forfeited.'"[24] We concluded that

> [t]he accrual date [for a forfeiture claim] is the date on which [the claimant] was on reasonable inquiry notice about the forfeiture, i.e., the earlier of the following: when he first became aware that the government had declared the currency forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture.[25]

Other circuits appear to agree with this view. In discussing federal forfeiture actions under the Federal Rule of Criminal Procedure, the Second Circuit in *Polanco* held that a cause of action seeking return of forfeited property accrued "when [the plaintiff] discovered or had reason to discover that his property had been forfeited without sufficient notice."[26] In *Polanco*, the "district court assumed that the cause of action accrued when the currency was seized . . . .

---

[23] 158 F.3d 647 (2d Cir. 1998).

[24] *Rodriguez-Aguirre*, 264 F.3d at 1210 (quoting *Polanco*, 158 F.3d at 654 (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 195 (1997) (stating that a cause of action accrues when the plaintiff has a "complete and present" cause of action and "can file suit and obtain relief"))).

[25] *Id.* at 1211.

[26] *Polanco,* 158 F.3d at 654.

But the specific constitutional violation alleged – the permanent deprivation of [the plaintiff's] property without notice – did not occur until sometime later, when the property was forfeited."[27]  And the Third, Fourth, Fifth and Seventh Circuits have also followed this general approach.[28]

Concluding that a claim challenging a forfeiture proceeding accrues only at the time of that proceeding – not earlier – makes considerable practical sense.  It permits a claimant to property to seek return of that property through an established forfeiture proceeding.  If the claim for return of property is successful, there may be no need for any litigation.  Moreover, concerns about due process violations (such as lack of notice) can often be addressed in those proceedings themselves.  On the other hand, if the cause of action were to accrue when the property is initially seized, claimants might be forced to file challenges to the forfeiture proceedings even before they had run their course.

Treating Mr. Kripp's cause of action as accruing at the time of the forfeiture proceedings, it is clear that they were timely filed.  Mr. Kripp's complaint alleges he received no notice of the state forfeiture hearing.  The complaint also contends that

----

[27] *Id.*

[28] *See, e.g.*, *United States v. Wright*, 361 F.3d 288, 289 (5th Cir. 2004) (per curiam); *Mantilla v. United States*, 302 F.3d 182, 186 (3d Cir. 2002); *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000); *United States v. Minor*, 228 F.3d 352, 359 (4th Cir. 2000).

[s]ometime in April of 2004, [Mr.] Kripp was verbally notified that his property was the subject of a forfeiture action in the Muskogee County District Court. . . . In the Spring of 2004, the Muskogee County District Court held several forfeiture hearings on property claimed by [Mr. Kripp] . . . [and at one of these hearings, Mr. Kripp] discovered that most of his property had been converted.[29]

Furthermore, Mr. Kripp alleges in his complaint that certain defendants "failed to establish a policy, practice and procedure to ensure . . . the proper and legal process for the . . . legal forfeiture of property . . . and developed a custom of operation and policy, which violates the Plaintiff's constitutional rights . . . ."[30] These claims regarding the forfeiture proceedings accrued at the earliest on March 4, 2004, the date the state declared his property forfeited, or on May 5, 2004, the date Mr. Kripp became aware that his property had already been forfeited. Either date puts the filing of his complaint clearly within the two-year statute of limitations for bringing § 1983 actions. Accordingly, the district court erred in dismissing Mr. Kripp's § 1983 action alleging due process violations from the state forfeiture process.

*C. Mr. Kripp's RICO Claims.*

Mr. Kripp's RICO claims essentially reprise his other claims in his complaint. Of particular importance here, Mr. Kripp alleges that some of the defendants "conducted their illegal enterprise by violating [Okl. Stat. tit. 63, § 2-

_____

[29] Am. Compl. at 4.

[30] *Id*. at 5.

-14-

506(B) (2000)], which requires notice of seizure and the intended forfeiture of property to be given to Plaintiff."[31] These claims are subject to a four-year statute of limitations.[32] The Supreme Court has suggested variously that the clock starts running in RICO cases when the plaintiff was actually injured, knew of his injury, or should have known of his injury.[33]

No matter which specific accrual test is applied, it is clear that Mr. Kripp timely filed his claims against the appellees arising out of the state forfeiture proceedings. The earliest his claims regarding the forfeiture process could have accrued would have been March 4, 2004, when his property was finally forfeited. It was on this date that Mr. Kripp was actually injured by the forfeiture process by losing any legal title to his property. More specifically, it was on this date that the fact he had received no notice of the forfeiture proceedings had some real world consequence. Given that Mr. Kripp filed his complaint on October 13, 2004, his RICO claims regarding the state forfeiture proceedings clearly fall within the four-year statute of limitations.

With respect to Mr. Kripp's RICO claims surrounding the initial search and seizure, however, we agree with the district court that he filed them out of time.

---

[31] *Id.* at 8.

[32] *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).

[33] *Rotella v. Wood*, 528 U.S. 549, 553, 554 n.2 (2000).

The search and seizure took place more than four years before Mr. Kripp filed his complaint. These claims are not brought within the statute of limitations merely by being packaged with the timely-filed claims regarding the forfeiture proceedings. The Supreme Court has plainly rejected a "last predicate act" rule for RICO claims because it "creates a limitations period that is longer than Congress could have contemplated" as "there are significant differences between civil and criminal RICO actions."[34] As the Court has explained, "[b]ecause a series of predicate acts . . . can continue indefinitely, such an interpretation, in principle, lengthens the limitations period dramatically. It thereby conflicts with a basic objective – repose –  that underlies limitations periods."[35] Since Mr. Kripp filed his RICO claims regarding the initial search and seizure outside the applicable four-year statute of limitations, we find they were properly dismissed by the district court.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Mr. Kripp's claims based on the alleged unconstitutional search and seizure of his property. We **REVERSE** the district court's dismissal of Mr. Kripp's claims challenging the forfeiture process. Finally, we **AFFIRM** the dismissal of Mr. Kripp's RICO claims challenging the initial search and seizure, but **REVERSE**

---

[34] *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187-88 (1997).

[35] *Id.*

the dismissal of Mr. Kripp's RICO claims challenging the state forfeiture proceedings.  We remand this case for further proceedings consistent with this opinion, including consideration of any other defenses that the appellees may properly raise.