**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANTHONY ROBBIN,

      Plaintiff - Appellant,

v.

CITY OF SANTA FE; RAY RAEL,
individually and in his official capacity;
GALEN BULLER, individually and in his
official capacity; ROBERT P. ROMERO,
individually and in his official capacity;
CHRISTINE KUEBLI, individually and
in her official capacity; and NANCY
JIMENEZ, individually and in her official
capacity,

      Defendants - Appellees.

No. 13-2030
(D.C. No. 1:11-CV-00879-JAP-RHS)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.

This is a 42 U.S.C. § 1983 action, with related state law claims, brought by former

Police Captain Anthony Robbin, who claims that his constitutional procedural due

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

process rights were violated when he was demoted from the rank of captain at the Santa Fe, New Mexico Police Department without proper procedural protections. We agree with the district court's grant of summary judgment in favor of then-Acting City Manager Galen Buller. Mr. Robbin did not state a §1983 claim against Mr. Buller because he did not show that Mr. Buller was personally responsible for Mr. Robbin's deprivation, and alternatively, the statute of limitations had run on Mr. Robbin's claims against Mr. Buller. We uphold the district court's grant of summary judgment for then-Interim Police Chief Ray Rael, on the grounds of qualified immunity, because a reasonable official could have concluded that Mr. Robbin was an exempt officer without the procedural protections Mr. Robbin claims he was due, and because Mr. Robbin forfeited his argument that Defendant Rael acted without the authority under municipal law to demote exempt employees.[1] We thus AFFIRM the district court's grant of summary judgment to these two defendants, and given that conclusion, we AFFIRM the district court's decision not to retain jurisdiction over Mr. Robbin's state law claims.

## I.

The facts, when viewed in the light most favorable to the non-moving party, Mr. Robbin, are as follows. Mr. Robbin joined the City of Santa Fe Police Department twenty-two years before his contested demotion. In April 2008, Mr. Robbin was promoted to the rank of captain in the Santa Fe, New Mexico police department. But in

---

[1] At Oral Argument, Mr. Robbin disavowed his claims against all other defendants, so only his claims against Defendants Buller and Rael are considered here.

April 2011, Mr. Robbin was demoted from that rank, which he characterizes as being "effectively fired." Aplt. Br. at 3.

The Santa Fe City Code ("City Code") provides due process protection for all "classified" employees. In contrast, "exempt" employees lack such procedural protections. In 2004, former Chief of Police Beverly Lennen suggested that the police captain rank be changed from a classified rank to an exempt one. She had consulted with various departments, including the legal department, about the propriety of making the captain rank exempt, and concluded her proposal did not conflict with relevant city rules and ordinances. Acting on this recommendation, City Manager Romero issued a memorandum purporting to change the captain rank from classified status to exempt status. He did not obtain city council or department director approval for this change. After City Manager Romero's memo circulated, as far as Mr. Robbin knew, the police captains hired or promoted by the Santa Fe Police Department served in exempt captain positions.

Notwithstanding this change in the status of the position of police captain, in 2007 Santa Fe posted a listing for a "classified" police captain. Then-lieutenant Robbin applied for the promotion. The application process required Mr. Robbin to take a test, which traditionally had been required of only classified—and not exempt—positions. However, Chief Lennen's 2004 proposal to change police captain to an exempt status had recommended requiring the captain applicants to test for the position, and for the department to choose the captain from those satisfactorily completing the test. No statute,

3

rule, or procedure said that the city could not test for exempt positions. Mr. Robbin scored highest on the test, and was selected for the promotion.

In April 2008, Mr. Robbin met with the current police department leadership to receive his promotion. Then-Chief Eric Johnson told Mr. Robbin that in order to receive the promotion, he would have to sign a blank human resources form that would serve as an acknowledgment that the captain position was not classified (the "Human Resources Form"). Upon Mr. Robbin's inquiry, he was told that the captain position was meant to be an exempt position. Mr. Robbin disputed the exempt nature of the captain rank, contending that the position posting had listed the position as classified and that he had tested for it as a classified employee would have done. He nevertheless signed the Human Resources Form acknowledging the exempt character of his captain position.

Mr. Robbin's remarks about the classified nature of the captain position led to a second meeting that day, between Mr. Robbin and Acting City Manager Buller, who informed Mr. Robbin that the captain position for which he had applied was an exempt position. Defendant Buller also presented to Mr. Robbin a rank status memorandum ("Rank Status Memo"), which stated that: 1) "this rank [as Captain] with the Santa Fe [was] exempt and for an indefinite term"; 2) he held that rank "at the pleasure of the Chief of Police" and with the City Manager's approval; 3) the City could demote Mr. Robbin from the rank of captain "at any time [and] for any reason"; 4) Mr. Robbin did not have a property right to the captain rank or any accompanying pay raise; 5) Mr. Robbin was not "entitled to any hearings or proceedings of any kind or nature prior to

[his] removal from [the rank of captain] and the appropriate reduction in salary"; 6) if Mr. Robbin were "removed from this rank, [he] would return to [his] highest classified rank which is Lieutenant"; and 7) "[o]ral representations and promises about security in this rank or other conditions of holding this rank [were] not authorized by [the City Manager], and [were] unenforceable." (R. Aple. Supp. App. at 1.)

Although Mr. Robbin disputed the position's exempt status with Defendant Buller, he ultimately signed the Rank Status Memo. He contends that he felt coerced because if he had not signed it, he would not have received the promotion, and his "career stopped right there." Aplt. Br. at 7. However, when Mr. Robbin signed the Rank Status Memo, he did not sign it under protest, nor did he raise the issue in any formal proceeding after these meetings or investigate further. He subsequently referred to himself as an exempt employee several times in a February 2011 email.

In April 2011, about three years after Mr. Robbin accepted the captain position, Interim Chief of Police Ray Rael sent Mr. Robbin a memo purporting to demote him to lieutenant "effective immediately." (R. Aplt. App. Vol. II at 218.) This memo stated that Mr. Robbin was demoted because he did not wear the proper uniform and did not explain the methodology used on certain statistical work in a satisfactory manner. The memo explained to Mr. Robbin that he had the right of reversion to the lieutenant rank, that he did not have a right to appeal, and that he was being demoted at Defendant Rael's discretion. The demotion decision was sent to human resources the same day, and Mr. Robbin was informed that, should he be interested in early retirement at the captain level,

5

he needed to decide whether to take early involuntary retirement with those higher captain-rank retirement benefits by the next day. Mr. Robbin elected to take involuntary early retirement available to him as a captain rather than be demoted to lieutenant.

Following these events, Mr. Robbin sued the City of Santa Fe and several individual defendants, including Defendants Buller and Rael, alleging violations of his constitutional rights under 42 U.S.C. § 1983 as well as related state-law claims. The district court granted summary judgment to all defendants on the federal claims. As to Defendant Buller, the district court granted summary judgment on Mr. Robbin's section 1983 claims because Defendant Buller was not directly responsible for Mr. Robbin's 2011 demotion. The district court granted summary judgment to Defendant Rael on the basis of qualified immunity. The district court stated that although the City could not properly have changed the captain rank from classified to exempt while properly following its stated rules (and thus Defendant Rael's action was potentially a due process violation), a reasonable officer in Defendant Rael's position could have concluded that Mr. Robbin was an exempt employee. Thus, a reasonable officer in Defendant Rael's position would not have known that his actions were clearly beyond his established authority, and Defendant Rael would be entitled to qualified immunity. Having granted summary judgment for the defendants on the federal claims, the district court dismissed without prejudice Mr. Robbin's associated state law claims.

## II.

## A. Standard of Review

Summary judgment is available if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id.

## B. Defendant Buller Was Not Directly Responsible For Any Constitutional Violation Against Mr. Robbin, Or Alternatively the Statute of Limitations Had Run on Mr. Robbin's Claim Against Mr. Buller

The district court granted summary judgment to Defendant Buller because, at the time Mr. Robbin was demoted in 2011, Defendant Buller was no longer in a position where he could have "direct personal responsibility" for any 2011 deprivation of Mr. Robbin's constitutional rights. (R. Aplt. App. Vol. II at 221) (quoting Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)). The court concluded that Mr. Robbin could not state a claim against Mr. Buller. (Id.) This disposition of the claim was correct if Mr. Robbin's claim here is that he had a property right to continued employment as a non-exempt employee provided by the state of New Mexico that could only be deprived with due process, and that his right was violated when Defendant Rael demoted him without due process. Cf. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (requiring "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment")); Greene v. Barrett, 174

7

F.3d 1136, 1140 (10th Cir. 1999) ("[W]e recently held that a state statute or regulation can create a protected property interest in a particular employment status or rank if it places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause." (internal quotation marks omitted)). The district court's grant of summary judgment in favor of Defendant Buller is correct as to such a claim, because there is no showing that Defendant Buller had any involvement whatsoever in the 2011 demotion of Mr. Robbin. In fact, at that time, the record shows that Mr. Buller was no longer employed by the City of Santa Fe at all.

Here, however, it is not clear whether Mr. Robbin is asserting only that his property right—allegedly violated by Defendant Buller—was a right to continued employment, in which case the disposition above is the correct one, or if he also is alternatively asserting he possessed a right to a certain continued classification of employment that Mr. Buller violated in 2008 when he was initially appointed a police captain as an exempt position. Cf. Mandel v. Allen, 81 F.3d 478, 480 (4th Cir. 1996) (discussing whether "a state employee has any legitimate claim of entitlement to continued employment at a particular classification" (internal quotation marks omitted)). If Mr. Robbin is arguing the latter,[2] we do not reach the merits of Mr. Robbin's claims

---

[2] (See R. Aplt. App. Vol. I at 140 ("Defendants, Galen Buller . . . committed ultra vires acts of changing the classified Police Captain position to exempt and was relied upon by Chief Rael in his violation of Mr. Robbin's implied contract and constitutional rights.").) But Mr. Robbin also seems to maintain that he always remained a classified employee throughout his tenure, in which case he suffered no cognizable injury in 2008 and the

Continued . . .

because the statute of limitations had run on Mr. Robbin's section 1983 claim based on any alleged 2008 violation by Defendant Buller of Mr. Robbin's right to a non-exempt classification as of his appointment to the position of captain.

Under Supreme Court precedent, for a section 1983 claim based on Mr. Buller's violation of Mr. Robbin's property right to a continued employment classification, we apply the analogous residual state limitations period for personal injury tort actions. Wilson v. Garcia, 471 U.S. 261, 280 (1985); Owens v. Okure, 488 U.S. 235, 249-50 (1989). In New Mexico, the personal injury statute of limitations is three years from the time the cause of action accrues. N. M. Stat. § 37-1-8. This court has held that "[a]lthough state law determines the applicable statute of limitations period, federal law governs the particular point in time at which a claim accrues" and that "section 1983 claims accrue, for the purposes of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006) (internal quotation marks omitted). On that principle, in Kripp, this court held that a section 1983 claim accrued at the time law enforcement authorities seized certain property from an alleged illegal auto parts operation. Id. The plaintiff brought 42 U.S.C. §§ 1983, 1985 actions against the law enforcement to recover the property. Id. at 1173. The court held that the plaintiff was barred by the statute of

statute of limitations only ran when he was harmed upon dismissal in 2011, see Aplt. Reply Br. at 10 ("Captain Robbin at material times held a protected 'classified' Captain position which entitled him to the protections of the City Code and City Rules."). In any case, as explained, we need not decide exactly what violation he is alleging.

9

limitations because the cause of action accrued at the time of seizure when plaintiff knew of the seizure and could have brought a legal claim. Id. at 1175. Kripp specifically noted that the cause of action did not wait to begin until the seized property was forfeited. Id.

Similar to the situation in Kripp, here, Mr. Robbin's cause of action against Defendant Buller for any violation of any right to a certain employment classification—whether carried out by coercing Mr. Robbin to sign the Human Resources Form and Rank Status Memo or by failing to investigate the status of the captain's rank before demanding Mr. Robbin's signatures—accrued in April 2008, when Mr. Robbin knew of the injury that would be the basis of his action against Defendant Buller. Mr. Robbin could have further pursued the matter then, yet he did not bring an action against Defendant Buller until Defendant Rael demoted him from the captain rank over three years later, in November 2011. Thus, Mr. Robbin did not bring a section 1983 claim based on any violation of any right to a continued employment classification by Mr. Buller within the three-year limitations period. Mr. Robbin's action against Defendant Buller is therefore barred.[3]

---

[3] Even assuming that Mr. Robbin's argument that Defendant Buller's actions led to a constructive fraud are cognizable under section 1983, that argument is similarly barred by the statute of limitations. Mr. Robbin's mutual mistake of fact argument is likewise barred by the three-year statute of limitations applicable to contracts with municipalities. N.M. Stat. § 37-1-24.

10

## C. Qualified Immunity for Defendant Rael

The district court concluded that Defendant Rael was entitled to qualified immunity because his actions were not such that a reasonable official in his position would have understood them to be outside the scope of his authority. This court has observed that "[w]hen a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Courtney v. Oklahoma ex rel., Dep't of Pub. Safety, 722 F.3d 1216, 1222 (10th Cir. 2013). This court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Mr. Robbin's claim here is that he had a property right to continued employment provided by the state of New Mexico that could only be deprived with due process, and that when Defendant Rael demoted him without process, that right was violated. Aplt. Br. at 17 (citing Loudermill, 470 U.S. at 542); see also Greene, 174 F.3d at 1140. Of course, unless the constitutional right at issue is clearly established, the defendant receives the protection of qualified immunity. When evaluating whether the constitutional right was clearly established, "the touchstone of [the] inquiry is whether the officers were on notice that their conduct was unlawful." Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003)). In general, "[t]he law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from

11

other courts shows that the right must be as plaintiff maintains." Id. As our sister circuits have recognized, qualified immunity also may be inappropriate when an official "performs an act clearly established to be beyond the scope of his discretionary authority." In re Allen, 106 F.3d 582, 593 (4th Cir. 1997); see also Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). In these discretionary authority situations, "[t]he defendant official bears the burden of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." In re Allen, 106 F.3d at 594 (internal quotation marks omitted). "Put another way . . . the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen [within] his legitimate job description." Holloman, 370 F.3d at 1266 (emphasis in original).

We conclude that given the arguments made before the district court, that court did not err in deciding that a reasonable officer in Defendant Rael's position would not have known that Mr. Robbin could not be demoted without classified-employee procedural protections. To determine that Mr. Robbin was an exempt employee not entitled to procedural protections accorded a non-exempt employee, Defendant Rael could have reasonably relied on, among other things: (1) the Rank Status Memo, which stated that the captain rank was "exempt" and that Mr. Robbin held "this rank at the pleasure of the Chief of Police with my approval as the City Manager," and which Mr. Robbin signed "acknowledge[ing]" that he "accept[ed] the above" (R. Aplee. Supp. App. at 1); (2) Defendant Rael's knowledge that there was no formal protest of this Rank Status Memo

or other formal indication of Mr. Robbin's disagreement with the transition of the captain rank to exempt status; (3) Mr. Robbin's own subsequent reference to himself as an exempt employee several times in a February 2011 email; (4) Defendant Rael's knowledge that former City Manager Jim Romero approved then-Chief Lennen's proposal to make the captain position exempt in 2004; (5) Defendant Rael's knowledge that former Chief Lennen had consulted with the human resources, legal, and clerk's office departments before suggesting classifying the position of captain as an exempt position to ensure it did not conflict with city ordinances; and (6) the police department's reliance on this memo, after 2004, to make every captain promotion a promotion to an exempt position. We agree with the district court that Defendant Rael did not act in such a way that a reasonable official in his position would have understood his actions treating police captain as an exempt position to be outside of his authority.

Nevertheless, on appeal, Mr. Robbin argues that Defendant Rael lacked even colorable authority to demote him from the captain position, because only the City Manager had authority to hire and fire employees—even exempt employees. Section 8.03 of the Santa Fe Municipal Charter states that "[t]he city manager shall have the power to hire and fire all city employees." (Exhibit B to Aplt. Br., Municipal Charter § 8.03.) The Santa Fe Police Department's Disciplinary Procedures ("Disciplinary Procedures") set out that "[a]ll disciplinary action shall require approval of the City Manager before implementation." Disciplinary Procedures ¶ 27.1.04, R. Aplt. App. Vol. I at 111. Mr. Robbin contends that these authorities together should have put Defendant Rael on notice

13

that he was acting outside of his authority in purporting to demote any employee.

Mr. Robbin has forfeited this new argument on appeal. He did not challenge Interim Chief of Police Rael's authority under New Mexico law to demote employees before the district court, and the district court expressly stated that "[n]one of the parties assert that Defendant Rael, as the Interim Chief of Police, did not have the authority to demote police officers, including both classified and exempt police officers." (R. Aplt. App. Vol. II at 225.) Under this court's precedent, "arguments raised for the first time in a civil appeal may be reviewed only for plain error." Somerlott v. Cherokee Nation Distributors, Inc., 686 F.3d 1144, 1151 (10th Cir. 2012). Mr. Robbin has not argued on appeal that the district court committed plain error; indeed, Mr. Robbin

> hasn't even attempted to show how his new legal theory satisfies the plain error standard. And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.

Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130-31 (10th Cir. 2011). "It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as a second-shot forum . . . where secondary, back-up theories may be mounted for the first time." Id. at 1130 (internal quotation marks omitted). Mr. Robbin's case—where the district court expressly stated that the parties were not disputing Defendant Rael's authority to demote exempt officers—is exactly the type of situation where forfeiture should apply if a party never raises the plain error issue before us.

### III.

We review the district court's decision to decline supplemental jurisdiction over Mr. Robbin's state law claims for abuse of discretion. Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan., 582 F.3d 1155, 1172 (10th Cir. 2009). The district court dismissed Mr. Robbin's state law claims without prejudice because it granted summary judgment on the federal claims. Our decision to affirm the district court's grant of summary judgment means that no claims over which the district court had original jurisdiction remained before that court. We thus conclude that dismissing these state law claims was not an abuse of discretion. See id.

### Conclusion

We conclude that either Mr. Robbin could not state a claim against Defendant Buller because Mr. Buller lacked personal responsibility for any constitutional violation against Mr. Robbin, or that the statute of limitations effectively barred Mr. Robbin's claim against Defendant Buller. We further hold that defendant Rael had qualified immunity from Mr. Robbin's claim. Having disposed of all federal claims,[4] the district

---

[4] On appeal, defendants filed a motion requesting that this court strike certain exhibits they claim Mr. Robbin altered, asking that these altered exhibits be replaced with corrected exhibits, and requesting that the court sanction Mr. Robbin and award attorney fees to them. In making this motion to the court, defendants did not follow 10th Cir. R. 27.3(C), which requires all motions to include the opposing party's position on the moved-for relief:

> Every motion filed under Fed. R. App. P. 27 and this rule must contain a statement of the opposing party's position on the relief requested or why

Continued . . .

court was within its discretion to dismiss the state claims. We therefore AFFIRM the

district court.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

the moving party was unable to learn the opposing party's position. In this regard, parties should make reasonable efforts to contact opposing parties well in advance of filing a motion.

Id. Mr. Robbin's response claimed that he had made a printing error because of the interface between Adobe Acrobat software and his printer functionality. Mr. Robbin asserted that if defendants had simply contacted him as required by this circuit's rules, he would have corrected the change. He asks the court to grant him attorney fees commensurate with his work responding to defendants' motion.

We deny both motions.